**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ALEXANDER WALLS, AKA Tip-Toe,
*Defendant-Appellant*.

No. 13-30223

D.C. No.
3:11-cr-05408-
RJB-1

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, Senior District Judge, Presiding

Argued and Submitted
February 3, 2015—Seattle, Washington

Filed April 21, 2015

Before: Raymond C. Fisher, Carlos T. Bea,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Criminal Law

The panel affirmed convictions for sex-trafficking offenses in violation of the Trafficking Victims Protection Act.

The panel held that when Congress used the language "in or affecting interstate or foreign commerce" in the TVPA, it intended to exercise its full powers under the Commerce Clause. Consistent with the outer limits of the commerce power defined in *Gonzales v. Raich*, 545 U.S. 1 (2005), the panel held that any individual instance of conduct regulated by the TVPA need only have a *de minimis* effect on interstate commerce, and that the district court therefore did not err when it instructed the jury that "any act that crosses state lines is 'in' interstate commerce" and "an act or transaction that is economic in nature" and "affects the flow of money in the stream of commerce to any degree 'affects' interstate commerce." The panel rejected the defendant's argument that the jury instruction essentially directed a verdict on the element of interstate commerce.

### COUNSEL

Thomas Michael Kummerow, Seattle, Washington, argued the cause and filed the reply brief for the Defendant-

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Appellant. Suzanne Lee Elliott, Seattle, Washington, filed the opening brief for the Defendant-Appellant.

Teal Luthy Miller, Assistant United State Attorney, Seattle, Washington, argued the cause and, along with Ye-Ting Woo, filed the briefs for the United States.

## OPINION

BEA, Circuit Judge:

Defendant-appellant Alexander Walls operated as a small-time pimp. The questions here are (1) whether, under the Commerce Clause of the United States Constitution, Congress has the power to regulate his local pimping, and (2) whether Congress intended a federal criminal statute to regulate local pimping consistent with the full extent of its commerce powers. We answer both questions in the affirmative.

## I

Walls was charged by criminal complaint in August 2011 with interstate transportation of a child for the purpose of prostitution, 18 U.S.C. § 2423(a), and witness tampering, 18 U.S.C. § 1512(b)(1). A grand jury in the Western District of Washington returned an indictment that same month charging Walls with the same criminal offenses. After two superseding indictments, Walls and a codefendant were charged in March 2012 in a third superseding indictment with sex-trafficking crimes involving seven victims and witness-tampering crimes involving three victims. The third superseding indictment charged Walls with conspiracy to

transport a juvenile female for prostitution in violation of 18 U.S.C. §§ 371 and 2423(a) (Count 1); interstate transportation of a child for prostitution in violation of 18 U.S.C. § 2423(a) (Count 2); witness tampering in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(b)(3) (Count 4); conspiracy to engage in sex trafficking by force, fraud, and coercion in violation of 18 U.S.C. §§ 1591(b)(1) and 1594 (Count 6); and sex trafficking through force, fraud, and coercion in violation of 18 U.S.C. § 1591(a)(1), 1591(b)(1) (Counts 7, 10, and 16). Walls pleaded not guilty, and the case went to trial in the Western District of Washington at Tacoma.

Counts 6, 7, 10, and 16 were brought under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1591 *et seq.*, for Walls's sex-trafficking conduct relating to three victims: Heather Acker, Starnesha Glover, and Cali Florez.[1] At trial, these women testified that Walls recruited and coerced them into prostitution within Washington State. As to the interstate-nexus element of the TVPA, Acker testified that Walls showed her how to access a website, TNABoard.com, to post an advertisement for prostitution services online. Detective Jacob Martin testified that the servers for TNABoard.com were located in Texas and Amsterdam. Florez testified that Walls took photos of her so that he could post ads on Craigslist for prostitution services for her; she also testified that she saw Walls access a computer and upload the photographs that he took of her. A Craigslist employee, William Clinton Powell, testified that in 2008, Craigslist users in Washington would have had to

---

[1] The TVPA prohibits sex trafficking "in or affecting interstate or foreign commerce" by "means of force, threats of force, fraud, [or] coercion." 18 U.S.C. § 1591(a)(1), (b).

access Craigslist via servers in Arizona or California. Glover testified that she used Trojan-brand condoms when she worked as a prostitute, buying them with money that Walls had her earn from prostitution acts. Richard Stephens, an employee of Church & Dwight Company, testified that Trojan-brand condoms are manufactured in Colonial Heights, Virginia, and are distributed throughout the country, including Washington State.

At the close of trial, the United States proposed that the district court instruct the jury that activity that "is economic in nature and affects the flow of money in the stream of commerce to any degree, however minimal, 'affects' interstate commerce." After Walls's counsel questioned the accuracy of the instruction (admitting that he "hadn't done exhaustive research"), the court struck the words "however minimal" from the government's proposed instruction. Prior to instructing the jury, the court gave counsel copies of the revised proposed instructions, including the above instruction (Instruction 24) regarding the requirement that Walls's conduct affect interstate commerce. Instruction 24, as presented to the jury, read in full:

> The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

> An act or transaction that crosses state lines is "in" interstate commerce.

> An act or transaction that is economic in nature and affects the flow of money in the stream of commerce to any degree "affects" interstate commerce.

Walls's counsel did not object to the instruction. Walls's counsel stated that he had done additional research, and that, in light of that research and the modification made by the court, "the defendant is satisfied with the instructions as they are written." The jury found Walls guilty on all counts, and the district court sentenced him to 23 years of imprisonment and five years of supervised release. Walls appeals his convictions as to Counts 6, 7, 10, and 16 for violations of the TVPA on the ground that the district court misstated the law and directed a verdict on the element of interstate commerce. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

Because Walls's counsel failed to lodge a timely objection to the jury instructions, whether Instruction 24 misstated the law is reviewed for plain error. *See Johnson v. United States*, 520 U.S. 461, 467 (1997). To show plain error, Walls must show that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected his substantial rights, which in the ordinary case means it affected the outcome of the district-court proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Marcus*, 560 U.S. 258, 262 (2010).

## III

### A

As it pertains to Walls, the TVPA prohibits sex trafficking "in or affecting interstate or foreign commerce" by "means of

force, threats of force, fraud, [or] coercion." 18 U.S.C. § 1591(a)(1), (b). The TVPA's commerce element reveals the constitutional basis of Congress's power to regulate sex trafficking: the Commerce Clause.[2] Both this court and the Supreme Court have held that when Congress uses the language "affecting interstate commerce," as it did in the TVPA, Congress generally intends to regulate to the outer limits of its authority under the Commerce Clause. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) ("The phrase 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause."); *United States v. Wright*, 625 F.3d 583, 600 (9th Cir. 2010) ("Congress chose to regulate to the outer limits of its Commerce Clause authority by inserting the 'affecting interstate commerce' language [into the Child Pornography Prevention Act]."). *But see Circuit City*, 532 U.S. at 118 (cautioning "we do not mean to suggest that statutory jurisdictional formulations necessarily have a uniform meaning whenever used by Congress," and interpreting a commerce jurisdictional phrase "with reference to the statutory context in which it is found and in a manner consistent with the [statute's] purpose"). But Walls argues that we must reconsider this standard by which we determine whether Congress intended to regulate to the limits of its Commerce Clause authority in light of *Bond v. United States*, 572 U.S. __, 134 S. Ct. 2077 (2014).

In *Bond*, defendant Carol Anne Bond attempted to poison a romantic rival with an arsenic-based compound and potassium chromate, causing a minor burn readily treated by

---

[2] The Commerce Clause of the United States Constitution assigns to Congress the authority "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3.

rinsing with water. 134 S. Ct. at 2085. Despite the small-scale effects of her offense, she was prosecuted under the Chemical Weapons Convention Implementation Act of 1998, which was enacted to implement the Convention on the Prohibition of the Development, Production, Stockpiling, and Use of Chemical Weapons and on Their Destruction. *Id.* at 2084–85. Although the case presented the question whether and to what extent Congress can enact legislation pursuant to a treaty of the United States, the Supreme Court avoided that difficult constitutional issue. *See id.* at 2087. Instead, it held that Congress did not intend the Act to apply to Bond's purely local conduct: "Absent a clear statement" of congressional intent, "we will not presume Congress to have authorized such a stark intrusion into traditional state authority." *Id.* at 2093–94.

Citing *Bond*, Walls argues this court should not construe the TVPA as extending to its constitutional limits under the Commerce Clause, absent a clear statement from Congress that it intended to intrude into traditional state authority. Congress made such a statement when it enacted the TVPA. The Supreme Court has held that when Congress uses the language "affecting commerce," as it did in the TVPA, it generally intends to regulate to the outer limits of its commerce power. *See Circuit City*, 532 U.S. at 115. Although *Bond* identifies two occasions in which the Court construed a statute as not reaching purely local conduct despite the statute's "affecting commerce" phrase, *see* 134 S. Ct. at 2089–90 (discussing *United States v. Bass*, 404 U.S. 336 (1971), and *Jones v. United States*, 529 U.S. 848 (2000)), this case is distinguishable because the congressional findings incorporated into the TVPA clearly demonstrate Congress's intent to enact a criminal statute addressing sex trafficking at all levels of activity, *see* 22 U.S.C. § 7101(b)(12) (finding

that, in the aggregate, sex trafficking "substantially affects interstate and foreign commerce" and "has an impact on the nationwide employment network and labor market"); *id.* § 7101(b)(14) ("No comprehensive law exists in the United States that penalizes the range of offenses involved in the trafficking scheme."); *see also United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) ("Congress concluded that prostitution in American cities encouraged and enlarged the market for this traffic from abroad."). We therefore hold that when Congress used the language "in or affecting interstate or foreign commerce" in the TVPA, it intended to exercise its full powers under the Commerce Clause.

Having concluded that the TVPA extends to the limits of the Commerce Clause, we must consider whether Instruction 24 lies within those bounds.

## B

In *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), the Supreme Court defined the outer limits of Congress's authority under the Commerce Clause, setting out three paradigmatic categories of permissible regulation of interstate commerce. Under the Commerce Clause, Congress can regulate (1) "the channels of interstate commerce," (2) "the instrumentalities of interstate commerce," and (3) "those activities that substantially affect interstate commerce." *Morrison*, 529 U.S. at 609 (quoting *Lopez*, 514 U.S. at 558–59).

Walls reads *Lopez/Morrison*'s third category to mean that Congress cannot regulate, pursuant to its Commerce Clause powers, acts that have only a *de minimis* effect on interstate commerce; rather, Walls contends that effect must be

"substantial."  But the third category of regulation outlined in *Lopez* and *Morrison* concerns the economic nature of the *class* of activity to be regulated, not the effect on interstate commerce of any *individual instance* of conduct.   The Supreme Court clarified this distinction in *Gonzales v. Raich*, 545 U.S. 1 (2005).  In *Raich*, the Court held that Congress has the power to regulate the purely intrastate cultivation and possession of marijuana for personal use because the Commerce Clause power extends to "purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."  545 U.S. at 18. That is, Congress's power to regulate within *Lopez/Morrison*'s third category—activities that substantially affect interstate commerce—extends to individual instances of conduct with only a *de minimis* effect on interstate commerce so long as the class of activity regulated is economic or commercial in nature.  *See id.* at 17 ("[W]hen a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." (internal quotation marks omitted)).

The TVPA is part of a comprehensive regulatory scheme that criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain. Congress recognized that human trafficking, particularly of women and children in the sex industry, "is a modern form of slavery, and it is the largest manifestation of slavery today." 22 U.S.C. § 7101(b)(1); *see also id.* § 7101(b)(2), (4), (9), (11).   Congress found that trafficking of persons has a substantial aggregate economic impact on interstate and foreign commerce, *id.* § 7101(b)(12), and that finding is not irrational, *see Lopez*, 514 U.S. at 557; *see also United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) (distinguishing the

TVPA from the statute struck down in *Morrison*). Consistent with the outer limits of the commerce power defined in *Raich*, we hold that any individual instance of conduct regulated by the TVPA need only have a *de minimis* effect on interstate commerce.[3] Accordingly, the district court did not err when it instructed the jury that "any act that crosses state lines is 'in' interstate commerce" and "an act or transaction that is economic in nature" and "affects the flow of money in the stream of commerce to any degree 'affects' interstate commerce."

## IV

Walls further argues that Instruction 24 "essentially directed a verdict on the element of interstate commerce in this case"; that the instruction "is a conclusive statement that the use of money, credit cards and condoms satisfied the first element of the crime"; and that "[t]he court removed any ability for the jury to consider the lack of nexus between Walls's acts and interstate commerce." This argument fails.

An instruction violates due process "if it creates a mandatory presumption, either conclusive or rebuttable, which shifts from the prosecution the burden of proving

---

[3] We note that, in contexts other than the TVPA, we have held that an act having a *de minimis* effect on commerce satisfies an express statutory requirement that the act be one affecting interstate commerce if the class of activities regulated by the statute substantially affects interstate commerce. *See, e.g.*, *United States v. McCalla*, 545 F.3d 750, 753, 756 (9th Cir. 2008) (possession of child pornography); *United States v. Boyd*, 480 F.3d 1178, 1179 (9th Cir. 2007) (per curiam) (Hobbs Act); *United States v. Shryock*, 342 F.3d 948, 984 n.6 (9th Cir. 2003) (RICO); *United States v. Serang*, 156 F.3d 910, 913–14 (9th Cir. 1998) (federal arson statute as applied to commercial buildings).

beyond a reasonable doubt an essential element of a criminal offense." *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987). A jury instruction includes a mandatory presumption if "reasonable jurors [are] require[d] . . . to find the presumed fact if the State proves certain predicate facts." *Carella v California*, 491 U.S. 263, 265 (1989). Instruction 24 did not create such a presumption; it merely defined the language "affecting interstate or foreign commerce" and correctly stated what the government was required to show. It left for the jury to decide whether Walls committed conduct that had at least a *de minimis* effect on interstate commerce.

## V

For the foregoing reasons, we affirm Walls's convictions.

**AFFIRMED.**