**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 16-10213 |
| v. | D.C. No. 4:15-cr-00178-HSG-1 |
| TUAN NGOC LUONG, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted November 14, 2017
San Francisco, California
Submission Deferred November 30, 2018
Resubmitted July 10, 2020

Filed July 17, 2020

Before: Johnnie B. Rawlinson and Jay S. Bybee, Circuit
Judges, and William E. Smith,[*] District Judge.

Opinion by Judge Smith

---

[*] The Honorable William E. Smith, United States District Judge for
the District of Rhode Island, sitting by designation.

**SUMMARY[**]**

**Criminal Law**

The panel affirmed a defendant's convictions, vacated his sentence, and remanded for resentencing in a case in which the defendant robbed a victim at gun point after luring him to a train station by posting an advertisement for a used car on Craigslist.

At the defendant's first trial, a jury found the defendant guilty of being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)), but did not reach a unanimous verdict on a Hobbs Act robbery count (18 U.S.C. § 1951(a)) and a dependent count of brandishing a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)(ii)). At retrial, a second jury convicted the defendant on the Hobbs Act robbery and brandishing counts.

The panel held that there was sufficient evidence at the first trial to satisfy the interstate-commerce element of the Hobbs Act because a rational jury could have concluded that the defendant advertised a commercial transaction on Craigslist, a website that facilitates interstate commerce, to facilitate the robbery. Because there was sufficient evidence presented at the first trial to sustain a conviction, there was *a fortiori* sufficient evidence presented at the retrial.

Rejecting the defendant's argument that the indictment was constructively amended during his second trial when the

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

government presented additional theories to satisfy the interstate-commerce element of Hobbs Act robbery, the panel wrote that the indictment was not required to allege facts specifically outlining how the defendant's use of Craigslist or a stolen credit card affected interstate commerce.

The panel held that because the jury was unanimous in concluding that the defendant's robbery affected interstate commerce, and the government's theories supporting the interstate-commerce element were based in law, a specific unanimity instruction was not warranted.

The panel held that the district court did not err in giving an instruction that an effect on interstate commerce can be established by proof of a probable or potential impact, which can be slight but not speculative. The panel added that any error would have been harmless.

Assuming that the defendant is correct that the prosecution incorrectly stated the law when it argued to the jury that the defendant's robbery had an effect on interstate commerce based upon "the *use* of interstate commerce," the panel held that the district court did not abuse its discretion in concluding that this did not rise to the level of incurable misconduct. The panel held that the prosecutor's statements attacking the credibility of defense counsel and telling the jury that it could only carry out its duty by siding with the government were plainly improper, but do not warrant reversal, in the context of both attorneys' arguments, the district court's directive to follow the instructions, the jury instructions themselves, and the government's statements at other times during the argument that the jury must weigh all of the evidence to reach its conclusion.

Reviewing for plain error, the panel held that it was clear error under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), for the jury to not have been instructed that knowledge of felon status was an element of felon-in-possession count, but even if the district court had so instructed the jury, there is no reasonable probability that the jury would have reached a different verdict, and the error therefore did not affect the defendant's substantial rights, nor the fairness, integrity, or public reputation of the first trial.

Following *United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020), the panel held that Hobbs Act robbery constitutes a predicate crime of violence under 18 U.S.C. § 924(c)(3)(A).

The panel held that insofar as the district court declined to give the defendant a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) based on his counsel's challenges to the federal government's jurisdiction to prosecute the alleged offense and to the evidence going to that question at trial, the district court erred as a matter of law.  Noting that the district court would have acted according to law by denying the adjustment for the defendant's lack of contrition, the panel vacated the sentence and remanded for resentencing, leaving it for the district court to make a factual finding on contrition in the first instance.

---

## COUNSEL

Ned Smock (argued), John Paul Reichmuth, and Robin Packel, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, Oakland, California; for Defendant-Appellant.

Philip Kopczynski (argued) and Jonas Lerman, Assistant United States Attorneys; Merry Jean Chan, Chief, Appellate Section, Criminal Division; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

## OPINION

SMITH, District Judge:

Appellant Tuan Ngoc Luong ("Luong") robbed Joel Montellano at gun point after luring him to a Bay Area Rapid Transit ("BART") train station in Castro Valley, California, by posting an advertisement for a used car on a Craigslist site. On March 26, 2015, a grand jury returned a three-count indictment charging Luong with (1) a violation of the Hobbs Act, 18 U.S.C. § 1951(a) (count 1); (2) brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (count 2); and (3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count 3). The sole contested issue at trial was whether the government's evidence was sufficient to establish that Luong's robbery had an effect on interstate commerce, as required to sustain a conviction under the Hobbs Act. *See* 18 U.S.C. § 1951(a).

The jury, after deliberating, found Luong guilty of being a felon in possession of a firearm, but did not reach a unanimous verdict on the Hobbs Act robbery count and dependent § 924(c) count. The district court declared a mistrial on counts 1 and 2. At retrial, the government expanded its interstate-commerce theory and presented additional evidence that the robbery affected interstate

commerce through the testimony of a second Craigslist representative, as well as testimony that Luong's attempted use of a stolen debit card[1] caused electronic transmissions to travel to out-of-state servers. The second jury convicted Luong on counts 1 and 2, and the district court sentenced him to 144 months' imprisonment followed by three years' supervised release.

Luong appeals from his convictions and sentence, pressing several arguments. We conclude that the government presented sufficient evidence to convict Luong on counts 1 and 2 at the first trial, and *a fortiori* the second trial, and affirm Luong's conviction on all counts, but we vacate Luong's sentence and remand for resentencing on count 3.

## BACKGROUND

We recount the facts underlying the robbery, which are largely undisputed, in the light most favorable to the government. *See United States v. Grovo*, 826 F.3d 1207, 1213–14 (9th Cir. 2016) (citing *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc)). On February 15, 2015, Luong posted an advertisement on Craigslist's San Francisco Bay Area website for a 1996 Acura Integra, asking "$1100 or OBO cash only." Specifically, Luong posted the advertisement, free of charge, on the "Dublin/Pleasanton/Livermore" subsection of the "East Bay" section of the "S.F. Bay Area" Craigslist site. Luong had posted, but deleted, a similar advertisement three days earlier

---

[1] The terms "debit card" and "credit card" are used interchangeably throughout this opinion.

on a different, but close by, subsection of the "East Bay" section of the "S.F. Bay Area" site.

Joel Montellano, who lived in Hayward, California, saw the advertisement and arranged to meet Luong shortly thereafter. Both Montellano and Luong lived in the San Francisco Bay Area, and the San Francisco-based Craigslist website refers to itself as "a local service" "that provides local classifieds and forums." Luong called Montellano and said his name was "Michael." They arranged to meet later that night at the Castro Valley BART train station for Montellano to inspect the car.

Montellano's girlfriend drove him to the BART station. Once there, at Luong's suggestion, Luong and Montellano took the car for a test drive and Montellano agreed to buy the car. Luong told Montellano that his wife had the title for the car and directed Montellano to drive to Luong's house. When they arrived, Montellano got out of the Acura to further inspect the car. Luong drew a pistol, pointed it at Montellano, and shouted: "give me your money." Montellano told Luong that the money was not with him, but was instead with his girlfriend at the BART station. At Luong's direction, and with Luong's gun pointed at him, Montellano placed his iPhone, his girlfriend's debit card, and his U.S. Department of Veterans Affairs medical card on the car's trunk. He provided Luong with an incorrect PIN for the debit card. Luong left the scene in the Acura. Montellano ran back to the BART station, and once there, his girlfriend called 911.

About thirty minutes after the robbery, Luong attempted to use the stolen debit card at nearby Citibank and Bank of America ATMs, but was unable to withdraw money using the

incorrect PIN. Two days later, law enforcement arrested Luong after posing as a potential buyer for the Acura. At the time of his arrest, Luong possessed a semi-automatic pistol and ammunition.

At Luong's first trial, the government solely relied on Luong's use of Craigslist to establish an effect on interstate commerce. From the evidence presented at trial, viewing the facts in the light most favorable to the government, a rational factfinder could have concluded the following: Craigslist is a "local classified and forums service" based in San Francisco, California. It is "primarily community moderated and mostly free." It displays user-posted classifieds in categories such as housing, various items for sale, and job postings.

Each month, Craigslist gets approximately 50 billion page views, approximately 60 million people in the United States use Craigslist, and 80 million advertisements are posted to the site. While it has an international audience, "Craigslist is not one national or worldwide site, [rather,] it's multiple local sites around the world," including 700 sites in more than 70 countries, with approximately 28 of those sites in California. Anyone in the world with an Internet connection may view any of the Craigslist sites. A user cannot search multiple Craigslist sites at once. Instead, a user must select a particular location site before he or she can search. The website's policies prohibit "[n]onlocal content" and "[p]osting the same ad to multiple locations." And while Craigslist has expanded beyond San Francisco, "it still retains that focus on local searches and local postings" and it "emphasizes and encourages local face-to-face transactions at a number of places in its website."

On a Craigslist site's opening page and on its for-sale-by-owner car pages, Craigslist provides links to "nearby cl" sites to allow users to access easily the Craigslist sites associated with nearby physical locations. For example, from the San Francisco car site (on which Luong posted the advertisement used to lure Montellano), a user can find the link to the Reno, Nevada, Craigslist site, in addition to other nearby California car sites. Similarly, on the Reno site, the San Francisco site is listed as a nearby site. The jury further heard that on the Craigslist Reno car site, for example, cars from California and Oregon were offered for sale.

The government offered anecdotal evidence of users buying and selling vehicles by using Craigslist sites in other states. Montellano testified that he had sold a motorcycle to someone from Nevada who traveled to California for the transaction after he posted it on Craigslist's San Francisco Bay Area site. Special Agent Brian Koh testified that he had used the Washington, D.C. Craigslist site while living in the Bay Area, because he might have needed a car for a temporary assignment in D.C.

Craigslist maintains redundant computer servers in California and Arizona. A Craigslist representative, William Powell, testified that he was not "certain if the data is on both [servers] or one at a time," but that they are intended to provide a backup if one server fails. He testified that it was his understanding that if the California server failed, the Arizona server would provide the data to the Internet user.

## DISCUSSION

### I.  Hobbs Act Jurisdictional Nexus

The court reviews de novo the sufficiency of the evidence, viewing "the evidence in the light most favorable to the prosecution and ask[ing] whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Grovo*, 826 F.3d at 1213–14 (citing *Nevils*, 598 F.3d at 1163–64).  "The district court's interpretation of a criminal statute and the scope of the conduct covered by the statute is a question of law reviewed de novo."  *United States v. Sarkisian*, 197 F.3d 966, 984 (9th Cir. 1999) (citing *United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir. 1994)).  If there was insufficient evidence to support the convictions on counts 1 and 2 at Luong's first trial, his convictions on those counts at the second trial must be vacated because they would violate the Double Jeopardy Clause of the Fifth Amendment.  *See United States v. Brown*, 785 F.3d 1337, 1350 (9th Cir. 2015) (stating that, if the evidence is insufficient to establish guilt at the defendant's first trial, retrial is foreclosed).  Thus, we focus our discussion on the sufficiency of the government's evidence at Luong's first trial.

The relevant offense of conviction, established by the Hobbs Act, provides in pertinent part that:

> Whoever in *any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery* or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in

furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a) (emphasis added). The Hobbs Act defines "commerce," in pertinent part, as "all commerce between any point in a State . . . and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3).

The Supreme Court has held that the Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence. The Act outlaws such interference 'in any way or degree.'" *Stirone v. United States*, 361 U.S. 212, 215 (1960) (quoting 18 U.S.C. § 1951(a)); *see also Taylor v. United States*, 136 S. Ct. 2074, 2077 (2016) (stating that the Hobbs Act "criminalizes robberies and attempted robberies that affect any commerce 'over which the United States has jurisdiction'"); *United States v. Lynch*, 437 F.3d 902, 908 (9th Cir. 2006) ("*Lynch IV*"). This court has similarly held that, when Congress chooses to use the words "affecting interstate commerce," it intends "to regulate to the outer limits of its Commerce Clause authority[.]" *Brown*, 785 F.3d at 1351. The Commerce Clause of the United States Constitution grants Congress the authority to regulate commerce in "three broad categories of activity": (1) "the use of the channels of interstate commerce[;]" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities[;]"

and (3) "those activities having a substantial relation to interstate commerce, . . . *i.e.*, those activities that substantially affect interstate commerce." *United States v. Morrison*, 529 U.S. 598, 608–09 (2000) (quotation marks and citations omitted). This broad authority, however, does not permit the federal government "to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *United States v. Lopez*, 514 U.S. 549, 567 (1995).

Consistent with this broad reading, the Hobbs Act interstate-commerce element is satisfied by actual impact when the government "establish[es] that a defendant's acts had a *de minimis* effect on interstate commerce." *Lynch IV*, 437 F.3d at 908 (citing *United States v. Atcheson*, 94 F.3d 1237, 1241 (9th Cir. 1996); *United States v. Phillips*, 577 F.2d 495, 501 (9th Cir. 1978)); *see also Atcheson*, 94 F.3d at 1243 (noting that connection to interstate commerce need only be "slight" (quoting *United States v. Huynh*, 60 F.3d 1386, 1389 (9th Cir. 1995))). Or, in the absence of actual impact, the interstate-commerce nexus requirement is met "'by proof of a probable or potential impact' on interstate commerce." *Lynch IV*, 437 F.3d at 909 (quoting *Huynh*, 60 F.3d at 1389).

By using a website that facilitates interstate commerce (like Craigslist) to advertise a commercial transaction, Luong necessarily affected or potentially affected "commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3). As the evidence at Luong's first trial demonstrated, Craigslist is an Internet site that facilitates commerce on a national and international level. *Cf. United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (holding

eBay "is an avenue of interstate commerce, like an interstate highway or long-distance telephone service"). The evidence presented at the first trial included, for example, that the victim previously sold a motorcycle on Craigslist to a Nevada buyer who traveled from Nevada to purchase and collect the motorcycle in California. The victim further testified that he received inquiries on other vehicles he posted on the Bay Area site from prospective buyers in Nevada, Texas, and Florida. He also testified that he had seen car advertisements posted on the Bay Area site from sellers located in Nevada, Oregon, Texas, Minnesota, and other states. Finally, the jury heard that the Reno, Nevada site contained advertisements from sellers in California and Oregon.

Moreover, despite Craigslist's stated aspirational goal of facilitating local transactions, the government highlighted at trial that Craigslist sites allow a user to search other localities across state lines. Specifically, local sites provide drop-down menus that include links to sites for nearby cities. For example, the Bay Area site links users to the Reno site, which links its users to the Bay Area site, other California local sites, and at least one site in Oregon. The jury also heard that the investigating agent in this case, while still in the Bay Area, once searched Washington, D.C.'s site for a car to purchase before he was transferred there on long-term assignment. From all of this, and viewing the evidence in the light most favorable to the government, a jury could reasonably conclude that the Craigslist Bay Area site facilitated commercial transactions beyond the local area and operated as an interstate market for used vehicles. *Cf. Horne*, 474 F.3d at 1006. Thus, Craigslist transactions are "commerce over which the United States has jurisdiction" and a robbery occurring within the context of such a transaction "affect[s] . . . commerce 'over which the United

States has jurisdiction.'" *Taylor*, 136 S. Ct. at 2077 (quoting 18 U.S.C. § 1951(b)(3)).

Even if we view Craigslist as facilitating only local transactions, the interstate-commerce jurisdictional nexus is still met here. The Supreme Court's opinion in *Taylor v. United States*, 136 S. Ct. 2074 (2016), guides our analysis. In *Taylor*, the Supreme Court concluded that, because Congress has the authority to regulate the national marijuana market, including the purely intrastate production, possession, and sale of marijuana, based on its aggregate effect on interstate commerce, so too may Congress regulate intrastate marijuana theft under the Hobbs Act. *Id.* at 2077. While the Court in *Taylor* limited its holding "to cases in which the defendant targets drug dealers for the purpose of stealing drugs or drug proceeds[,]" and declined to "resolve what the Government must prove to establish Hobbs Act robbery where some other type of business or victim is targeted[,]" *id.* at 2082, the logic employed in *Taylor* readily applies to the facts of this case. Therefore, the Hobbs Act's interstate-commerce element is satisfied in cases like this one, where the government demonstrates that a person used a commercial website to advertise a commercial transaction in order to facilitate a robbery.

Luong advances several arguments against a jurisdictional nexus, none of which is convincing. First, Luong argues that the Ninth Circuit Model Criminal Jury Instructions undermine the government's theory of the case. The Ninth Circuit Model Criminal Jury Instruction for the "affecting interstate commerce" element of the Hobbs Act was updated in December 2016 to state that, "[c]onduct affects interstate commerce if it in any way involves, interferes with, changes, or alters the movement or transportation or flow of goods,

merchandise, money, or other property in commerce between or among the states or between the United States and a foreign country." 9th Cir. Crim. Jury Instr. 8.143B. Luong avers that the government's Internet data-transmission theory is insufficient under the model instruction, emphasizing that the criminal conduct must affect "goods, merchandise, money, or other property in commerce."

This argument fails. Pattern jury instructions are not authoritative legal pronouncements. *See* Caveat, 9th Cir. Crim. Jury Instr. iv, *available at* http://www3.ce9.uscourts.gov/ jury-instructions/sites/default/files/WPD/Criminal_Instructions _2019_12_0.pdf ("The Ninth Circuit Court of Appeals does not adopt these instructions as definitive. Indeed, occasionally the correctness of a given instruction may be the subject of a Ninth Circuit opinion."). In any event, we do not rely on the government's data-transmission theory, and instead we conclude that the jurisdictional element is met because Luong's use of a service like Craigslist had an actual impact on interstate commerce. For this reason, whether the data-transmission theory comports with the model instruction is of no import here.

Second, Luong argues that the Hobbs Act's jurisdictional language—requiring that the offense conduct "obstruct[], delay[], or affect[] commerce," 18 U.S.C. § 1951(a)— provides a narrower jurisdictional grant than those criminal statutes requiring the defendant to "us[e] the mail or any facility or means of interstate . . . commerce," *see, e.g.*, 18 U.S.C. § 2422(b). In contrast, the government asserted during oral argument that the mere use of any instrumentality of interstate commerce is sufficient under the Hobbs Act. We do not need to reach this question, however, because the evidence was sufficient to show that Luong clearly affected

interstate commerce by robbing his victim as part of a commercial transaction facilitated by a website that forms an interstate market for used cars.

This conclusion does not render the interstate-commerce element of the Hobbs Act superfluous. *See Taylor*, 136 S. Ct. at 2081 (stating that while the Hobbs Act, "unlike the criminal provisions of the [Controlled Substances Act], applies to forms of conduct that, even in the aggregate, may not substantially affect commerce," the Hobbs Act interstate-commerce element is not superfluous). While the Hobbs Act is implicated by robberies involving commercial transactions facilitated by electronic marketplaces, this does not mean *every* local robbery is a Hobbs Act robbery simply because the robber touched his smart phone to check the weather or plan a get-away route. *See, e.g.*, *Lynch IV*, 437 F.3d at 909–10 (adopting depletion-of-assets test in Hobbs Act cases involving crimes directed toward individuals with an indirect effect on interstate commerce (citing *United States v. Collins*, 40 F.3d 95, 99 (5th Cir. 1994))); *United States v. Turner*, 272 F.3d 380, 387 (6th Cir. 2001) (concluding that there was insufficient evidence to satisfy interstate-commerce element because the government did not demonstrate that the victim, "as an individual victim, had a substantial connection to 'a business engaged in interstate commerce,' or that the defendants were motivated by [the victim]'s connection to interstate commerce" (internal citation omitted)), *amended sub nom. United States v. James*, 280 F.3d 1078 (6th Cir. 2002); *United States v. Peterson*, 236 F.3d 848, 853 (7th Cir. 2001) (noting that "the government rightly concedes that the out-of-state origin of the currency alone is insufficient to satisfy the commerce element of the Hobbs Act" (quotation omitted)), *abrogated on other grounds by Taylor*, 136 S. Ct.

2074. In this case, the Craigslist website was an integral element of the robbery, not a peripheral afterthought.

Accordingly, because a rational juror could have concluded that Luong advertised a commercial transaction on Craigslist to facilitate the robbery, the evidence was sufficient to satisfy the interstate-commerce element of the Hobbs Act. Because there was sufficient evidence presented at Luong's first trial to sustain a conviction, there was *a fortiori* sufficient evidence presented at Luong's retrial.

## II. Constructive Amendment of the Indictment

The court reviews de novo an argument that the indictment was constructively amended. *United States v. Adamson*, 291 F.3d 606, 612 (9th Cir. 2002).

It is axiomatic that "after an indictment has been returned[,] its charges may not be broadened through amendment except by the grand jury itself." *Stirone*, 361 U.S. at 215–16 (citing *Ex parte Bain*, 121 U.S. 1, 7 (1887)). "[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Id.* at 217. A constructive amendment to the indictment occurs "where . . . there is a complex of facts presented at trial distinctly different from those set forth in the charging instrument." *United States v. Hui Hsiung*, 778 F.3d 738, 757 (9th Cir. 2015) (alterations omitted) (quoting *Adamson*, 291 F.3d at 615). If the court determines that the indictment was constructively amended, a reversal is always in order. *Adamson*, 291 F.3d at 615.

Count 1 of the indictment, alleging a violation of the Hobbs Act, 18 U.S.C. § 1951(a), states that Luong

knowingly obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce by robbery, in that [he] did unlawfully take and obtain against the victim's will by means of actual and threatened force, by violence, and by fear of injury to the victim's person, personal property from the victim, namely the victim's iPhone 6, credit card, driver's license, and medical card, by purporting to offer for sale on Craigslist, an online marketplace allowing users to advertise merchandise and services for sale throughout the United States, a 1996 Acura Integra, and when the victim met the defendant in order to purchase the car, the defendant robbed the victim at gunpoint.

Luong argues that the indictment was constructively amended during his second trial when the government presented additional theories to the jury to satisfy the interstate-commerce element. Specifically, Luong argues that the indictment, as written, did not allege that he had affected interstate commerce by triggering out-of-state electronic transmissions by the attempted use of the credit card at an ATM after the robbery.

An indictment generally "is sufficient if it sets forth the elements of the charged offense" so as to provide the defendant with fair notice of the charges against him and to ensure that the defendant is not placed in double jeopardy. *United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004) (quoting *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("*Woodruff I*")). To secure a conviction for Hobbs Act robbery, a grand jury must set forth in the indictment, and

the government must prove, two elements: "(1) that the defendant either committed or attempted to commit a robbery, and (2) a nexus between the defendant's acts and interstate commerce." *Id.* (quoting *United States v. Woodruff*, 122 F.3d 1185, 1185 (9th Cir. 1997) ("*Woodruff II*")). But while "the interstate commerce nexus is an element that 'must be proved at trial[,] . . . it need not . . . be expressly described in the indictment.'" *Id.* (quoting *Woodruff I*, 50 F.3d at 677). In *Woodruff I*, the court held that "[a]lthough the indictment contained no facts alleging how interstate commerce was interfered with, and did not state any theory of interstate impact," the indictment was sufficient on its face. 50 F.3d at 676.

The indictment here alleges that Luong committed Hobbs Act robbery by offering a car for sale on Craigslist and then robbing the victim at gunpoint of his credit card and other personal effects. The government proved as much at the second trial. The indictment was not required to allege facts specifically outlining how Luong's use of Craigslist or the stolen credit card affected interstate commerce. *See Rodriguez*, 360 F.3d at 958. Luong was tried on the same "complex of facts" as that set forth in the indictment, and thus, Luong had notice of the charges against him. *See Hui Hsiung*, 778 F.3d at 757–58 (finding no constructive amendment where the "facts in the indictment necessarily supported" the evidence presented at trial and thus "gave fair notice" of the facts proved at trial).

## III.    Specific Unanimity Instruction

Where, as here, the issue has been preserved, the court reviews for abuse of discretion the district court's denial of a

defendant's request for a specific unanimity instruction. *United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir. 1999).

"[I]n the ordinary case, a general instruction that the verdict must be unanimous will be sufficient to protect the defendant's rights." *United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir. 1989) (quoting *United States v. Echeverry*, 719 F.2d 974, 974 (9th Cir. 1983)). Under certain circumstances, however, a specific unanimity instruction should be given, instructing the jury not to return a guilty verdict unless it "unanimously agree[s] to a particular set of facts." *Id.* (alteration in original) (quoting *Echeverry*, 719 F.2d at 975). A specific unanimity instruction is necessary "where it appears that 'there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed . . . acts'" consisting of different legal elements. *Id.* (quoting *Echeverry*, 719 F.2d at 975). In general, "jurors are not constitutionally required to unanimously agree on alternative theories of criminal liability," and accordingly, no specific unanimity instruction is warranted where jurors may find criminal liability based on alternative means of committing a single element of a crime. *Kim*, 196 F.3d at 1083.

At his retrial, Luong requested an instruction requiring the jury to unanimously agree on the factual basis underpinning the interstate-commerce element. The district court declined, concluding that the government's two theories went to the same offense element, and accordingly, the jury did not need to "agree to the specific means by which interstate commerce was affected." On appeal, Luong contends that the district court abused its discretion in failing to give a specific unanimity instruction because, in his view, there was "more than a 'genuine possibility' of jury confusion in this case."

The district court did not abuse its discretion in denying Luong's request for a specific unanimity instruction. The government's interstate-commerce theories were alternative means the jury could have found satisfied a single element of Hobbs Act robbery, and "jurors are not constitutionally required to unanimously agree on alternative theories of criminal liability." *Kim*, 196 F.3d at 1083. Because the jury was unanimous in concluding that Luong's robbery affected interstate commerce and the government's theories supporting the interstate-commerce element were based in law, a specific unanimity instruction was not warranted.

## IV.     Hobbs Act Jury Instruction

The court reviews de novo Luong's next preserved claim of error: whether the district court erred in crafting the jury instruction at Luong's retrial. *See United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010). A district court "has substantial latitude" in crafting jury instructions, provided that they "fairly and adequately cover the issues presented." *United States v. Hicks*, 217 F.3d 1038, 1045 (9th Cir. 2000) (quoting *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999)). Thus the question on appeal is whether "the instructions, viewed as a whole, 'were misleading or inadequate to guide the jury's deliberation.'" *United States v. Kaplan*, 836 F.3d 1199, 1215 (9th Cir. 2016) (quoting *United States v. Moore*, 109 F.3d 1456, 1465 (9th Cir. 1997) (en banc)). Jury instructions only require reversal where they prejudiced the defendant. *Id.*

At the retrial, the district court, over Luong's objection, instructed the jury in relevant part that the government was required to prove, beyond a reasonable doubt, that

the robbery affected interstate commerce in some way. An effect on interstate commerce is established by proof of an actual impact, however small, *or in the absence of an actual impact, proof of a probable or potential impact. This impact can be slight, but not speculative.*

(emphasis added). Luong argues on appeal that this instruction misstated the law and allowed the jury to impermissibly convict "if it found that his robbery had no more than a potential slight impact on interstate commerce."

Even putting aside the inquiry into whether there is any meaningful difference between a slight potential effect and great potential effect when the character of any potential effect cannot be known, the district court did not err in giving this instruction. This court has intimated that it is sufficient for the government to prove a *de minimis*, probable effect on interstate commerce, so long as it is not purely speculative. *See United States v. Lynch*, 282 F.3d 1049, 1052 (9th Cir. 2002), *overruled on other grounds*, 437 F.3d 902 (9th Cir. 2006) (stating that *Atcheson* supported a finding of "only a *de minimis* effect on interstate commerce, including a *de minimis* effect that was probable rather than actual" (citing *Atcheson*, 94 F.3d at 1243)); *cf. United States v. Reyes*, 363 F. App'x 192, 195 (3d Cir. 2010) (stating that the government was "required to prove only a minimal, potential effect on interstate commerce").

Moreover, any error would have been harmless. It is clear beyond a reasonable doubt that a rational jury could have found Luong guilty because, as stated above, Luong clearly affected interstate commerce by robbing his victim as part of

a commercial transaction facilitated by a website that forms an interstate market for used cars.

## V.  Prosecutorial Misconduct

The court reviews for abuse of discretion preserved claims of prosecutorial misconduct, applying a harmless error analysis. *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1150 (9th Cir. 2012).  This requires viewing the "challenged conduct 'in the entire context of the trial,' and revers[ing] 'only if it appears more probable than not that prosecutorial misconduct materially affected the fairness of the trial.'" *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1190–91 (9th Cir. 2015) (quoting *United States v. Ruiz*, 710 F.3d 1077, 1082 (9th Cir. 2013)).  Where the defendant failed to object to a statement at trial, the court reviews for plain error. *Id.* at 1190.  On plain error review, reversal is warranted only if "(1) there was error; (2) it was plain; (3) it affected the defendant's substantial rights; and (4) 'viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *Id*. at 1191 (quoting *United States v. Combs*, 379 F.3d 564, 568 (9th Cir. 2004)).  While there is no question that the tenor of the parties' arguments was tense and accusatory, we ultimately conclude that nothing in them requires reversal.

Luong first argues that the government committed misconduct by misstating the law; specifically, he contends that the prosecutor repeatedly argued to the jury that Luong's robbery had an *effect* on interstate commerce based upon "the *use* of interstate commerce."  This issue was preserved, and thus we review whether the district court abused its discretion

in finding that any alleged error was cured by its instructions. *See Del Toro-Barboza*, 673 F.3d at 1150.

Because we do not reach whether the mere use of the Internet, no matter how slight, is sufficient to satisfy the Hobbs Act jurisdictional nexus, we assume the defendant is correct that the government incorrectly stated the law. Even so, the district court did not abuse its discretion in concluding that this did not rise to the level of incurable misconduct. The district court and the government admonished the jury several times that the jury instructions controlled over the government's recitation of the law, and the jury instructions clearly stated that a conviction required the jury to find that Luong's robbery had affected interstate commerce. As discussed above, there was considerable evidence that Craigslist formed an interstate market for used cars and that Luong affected interstate commerce by robbing his victim as part of a commercial transaction facilitated by Craigslist. Therefore, the prosecutor's statements when considered "in the entire context of the trial" amounted to harmless error. *See Alcantara-Castillo*, 788 F.3d at 1190 (quoting *Ruiz*, 710 F.3d at 1082).

Luong next attacks the prosecutor's statements that the jury needed to do its "job" or "duty" and convict the defendant, as well as the prosecutor's accusations that defense counsel had asked the jury to disobey the instruction and "[f]eign[ed] re[v]erence for the Constitution." The district court's denial of the defendant's motion for new trial is reviewed for plain error because defense counsel did not contemporaneously object. *See United States v. Sanchez*, 176 F.3d 1214, 1218 (9th Cir. 1999).

This court has held that it is "improper for the prosecutor to state that the duty of the jury is to find the defendant guilty." *Id.* at 1224–25 (citing *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir. 1986)); *see also United States v. Young*, 470 U.S. 1, 18, 20 (1985) (stating that the prosecutor erred in trying "to exhort the jury to 'do its job' [because] that kind of pressure, whether by the prosecutor or defense counsel, has no place in the administration of criminal justice," but ultimately concluding that, "reviewed in context," the statements did not undermine fundamental fairness and "contribute to a miscarriage of justice"). The court, in *Sanchez*, observed that

> [t]here is perhaps a fine line between a proper and improper "do your duty" argument. It is probably appropriate for a prosecutor to argue to the jury that "if you find that every element of the crime has been proved beyond a reasonable doubt, then, in accord with your sworn duty to follow the law and apply it to the evidence, you are obligated to convict, regardless of sympathy or other sentiments that might incline you otherwise."

*Id.* at 1225. In *Sanchez*, the court concluded that the prosecutor's argument had been improper in part because the prosecutor "did not tell the jury that it had a duty to find the defendant guilty only if every element of the crime had been proven beyond a reasonable doubt. Nor did he remind the jury that it had the duty to acquit Sanchez if it had a reasonable doubt regarding his guilt." *Id.*; *see also United States v. Gomez*, 725 F.3d 1121, 1131 (9th Cir. 2013) (holding prosecutor's statement was proper where prosecutor argued that "*if* the jury finds that the prosecution has met its

burden of proving the elements beyond a reasonable doubt, *then* it is the jury's duty to convict" (emphasis in original)).

The government's statements plainly were improper: the government impermissibly attacked the credibility of defense counsel and told the jury that it could only carry out its duty by siding with the government. But, in the context of both attorneys' arguments, the district court's directive to follow the instructions, the jury instructions themselves, and the government's statements at other times during the argument that the jury must weigh all of the evidence to reach its conclusion, these statements do not warrant reversal. *See United States v. Frederick*, 78 F.3d 1370, 1380 (9th Cir. 1996) (disapproving of a prosecutor's statements maligning defense counsel to the jury, but concluding that those comments did not "cross[] the line sufficiently to warrant" reversal).

## VI.      Felon in Possession Conviction under Section 922(g)(1)

After this case was argued and submitted, the Supreme Court decided *Rehaif v. United States*, in which it held that, in order to convict a defendant under 18 U.S.C. § 922(g), the government "must prove both that the defendant knew he possessed a firearm *and* that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. 2191, 2200 (2019) (emphasis added). We granted Luong leave to file supplemental briefing to address the impact of *Rehaif* on his conviction on count 3 for being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1).

The following is undisputed:  the indictment did not charge the requisite knowledge of status; Luong stipulated to the fact that he had, at the time of the robbery, been convicted of a crime punishable by imprisonment for a term exceeding one year; and the government did not present evidence to the jury that Luong knew he was a convicted felon when he possessed the firearm.  Luong argues that the district court's failure to instruct the jury that knowledge of his felon status was an element of the felon-in-possession count constituted plain error.  The government concedes that, with respect to this knowledge-of-status element, an obvious error occurred, but it argues that such error did not affect Luong's substantial rights, nor does it seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

The court applies plain error review to a sufficiency-of-the-evidence argument that was not raised before the district court.  *See United States v. Benamor*, 937 F.3d 1182, 1188 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 818 (2020) (citing *United States v. Flyer*, 633 F.3d 911, 917 (9th Cir. 2011)).  To establish plain error, a defendant must demonstrate "(1) an error (2) that was obvious and (3) that affected the defendant's substantial rights and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings[.]"  *Id.* (citing *United States v. Olano*, 507 U.S. 725, 734, 736 (1993)).

It was clear error, under *Rehaif*, for the jury to not have been instructed that knowledge of status was an element of count 3.  *See Henderson v. United States*, 568 U.S. 266, 272 (2013) ("Even where a new rule of law is at issue, Rule 52(b) does not give a court of appeals authority to overlook a failure to object unless an error not only 'affect[s] substantial rights' but also 'seriously affect[s] the fairness, integrity or

public reputation of judicial proceedings.'" (quoting *Olano*, 507 U.S. at 732)); *see also Griffith v. Kentucky*, 479 U.S. 314, 321 & n.6 (1987) (holding that Supreme Court decisions govern criminal cases pending on direct appeal).   Still, however, Luong cannot satisfy the third and fourth requirements of the plain error test.  For an error to affect a defendant's substantial rights, in the ordinary case, the defendant must demonstrate "'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different[.]" *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004)).

Luong had at least six prior felony convictions at the time he possessed the charged firearm, four of which resulted in prison sentences exceeding one year.   In total, these convictions resulted in Luong being incarcerated for more than a decade.  In light of this, while clear error did occur here, we conclude that, even if the district court had instructed the jury on the knowledge-of-status element, there is no reasonable probability that the jury would have reached a different verdict on count 3.  *See Rehaif*, 139 S. Ct. at 2198 (noting that it would not be burdensome for the government to prove a defendant's knowledge of status where "knowledge can be inferred from circumstantial evidence" (quoting *United States v. Staples*, 511 U.S. 600, 615 n.11 (1994))).  For this reason, the error did not affect Luong's substantial rights, nor the fairness, integrity, or public reputation of the first trial.  *See Benamor*, 937 F.3d at 1189 (holding plain error did not affect the defendant's substantial rights, nor the fairness, integrity, or public reputation of the trial, where the defendant had seven prior convictions:  three resulting in sentences of more than one year of imprisonment, including one for being a felon in possession of a firearm, and

one for being a felon in possession of ammunition); *see also United States v. Johnson*, No. 17-10252, 2020 WL 3458969, at \*5 (9th Cir. June 25, 2020) (holding that uncontroverted evidence of felony convictions for which a defendant served sentences exceeding one year "will ordinarily preclude a defendant from satisfying the fourth prong of plain-error review when challenging the sufficiency of the evidence that he knew of his status as a convicted felon"). Thus, we affirm Luong's conviction on count 3.

## VII.    Hobbs Act Robbery as a Predicate Crime of Violence under Section 924(c)

The court reviews "de novo whether a criminal conviction is a crime of violence under § 924(c)(3)." *United States v. Dominguez*, 954 F.3d 1251, 1256 (9th Cir. 2020) (citing *United States v. Begay*, 934 F.3d 1033, 1037 (9th Cir. 2019)).

In his penultimate challenge on appeal, Luong argues that the district court erred in denying his motion to dismiss count 2 of the indictment, which charged Luong with brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). As the basis for his challenge, Luong argues that Hobbs Act robbery does not constitute a predicate crime of violence as defined in § 924(c)(3)(A). During the pendency of this appeal, another panel of this court "reaffirm[ed] that Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3)(A)," *Dominguez*, 954 F.3d at 1261, thus foreclosing Luong's argument. For the same reasons as those set forth in *Dominguez*, we hold Hobbs Act robbery constitutes a predicate crime of violence, and therefore affirm Luong's conviction on count 2.

## VIII.   Credit for Acceptance of Responsibility

In his final challenge on appeal, Luong argues that the district court erred in declining to give him a two-level downward adjustment for acceptance of responsibility under the United States Sentencing Guidelines ("U.S. Sentencing Guidelines" or "U.S.S.G."). "We review de novo whether the district court misapprehended the law with respect to the acceptance of responsibility reduction." *United States v. Garrido*, 596 F.3d 613, 617 (9th Cir. 2010) (quoting *United States v. Cortes*, 299 F.3d 1030, 1037 (9th Cir. 2002)). "Whether or not the defendant has accepted responsibility for his crime is a factual finding that we review for clear error." *Id.* (citing *United States v. McKinney*, 15 F.3d 849, 852 n.6 (9th Cir. 1994)).

The U.S. Sentencing Guidelines provide for a two-level decrease to a defendant's offense level where the defendant "clearly demonstrates acceptance of responsibility for his offense[.]" U.S.S.G. § 3E1.1(a).  A defendant's decision to go to trial does not necessarily foreclose him from receiving this offense-level decrease. U.S.S.G. § 3E1.1 cmt. 2; *see also McKinney*, 15 F.3d at 854 (vacating sentence and concluding the defendant was eligible for a reduction where he confessed and assisted police upon apprehension, tried to plead guilty but was rebuffed, and went to trial on conspiracy charge). The comments to § 3E1.1(a) state, in relevant part:

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve

issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

U.S.S.G. § 3E1.1 cmt. 2. At bottom, the district court must determine whether a defendant "manifest[ed] a genuine acceptance of responsibility for his actions." *Cortes*, 299 F.3d at 1038 (quoting *McKinney*, 15 F.3d at 852). "If [the defendant's] statements and conduct made it clear that his contrition was sincere, he [is] entitled to the reduction." *Id.* The focus of this inquiry must be "on the defendant's personal contrition, rather than on his exercise of his constitutional rights" in order to "best serve[] the purposes of the acceptance of responsibility reduction." *McKinney*, 15 F.3d at 853. And just as the U.S. Sentencing Guidelines do not aim to "penalize the exercise of the constitutional right to go to trial[,]" *id.* at 852, the Guidelines do not set out to penalize a defendant for preventing constitutionally infirm or otherwise inadmissible evidence from reaching the jury. *See United States v. Ochoa-Gaytan*, 265 F.3d 837, 844 (9th Cir. 2001) (holding that the district court erred in denying acceptance of responsibility adjustment on the basis that the defendant moved to suppress a constitutionally infirm statement).

At trial, Luong admitted his factual guilt—specifically, that he used a gun to rob Montellano—but he moved to exclude evidence supporting the government's interstate-commerce theory. To illustrate, Luong objected to the testimony of Patrice Alexander-Lee, a product manager at STAR Networks, on the grounds of personal knowledge, lack of expert notice, and hearsay, as well as to the testimony of Jeffrey Jackson, a Bank of America operations analyst and

custodian of records, on the basis of lack of personal knowledge. The district court allowed Alexander-Lee and Jackson to testify but later struck portions of Jackson's testimony. Luong further objected to, on hearsay and Confrontation Clause grounds, the testimony of William Powell, Craigslist's director of government and law enforcement relations, regarding information he had learned from coworkers at Craigslist. The district court agreed the testimony would be hearsay, and ruled that "the only server-related information to which he may testify is his knowledge of the location of the servers." In response to this ruling, the government summoned to testify Dallas Wisehaupt, a Craigslist system manager, that same day. The district court overruled an objection that it was expert testimony for which Luong had not been provided proper notice and time to prepare.

At the sentencing hearing, the district court acknowledged that Luong's decision to go to trial was not reason in itself to deny the two-level decrease. The district court stated that Luong had challenged only the jurisdictional element of the Hobbs Act, and commented on counsel's zealous performance in challenging that single element. The district court noted that, while Luong's challenges to the government's evidence on the interstate-commerce element constituted a "legitimate strategy," they were not consistent with contrition. Making no other findings as to the defendant's contrition, the district court concluded that, under these circumstances, a reduction for acceptance of responsibility was not warranted.

The district court erred, Luong contends, because his evidentiary objections went only to whether the interstate-commerce nexus was satisfied, he presented no evidence in

his defense, and his cross-examination was confined to challenging the interstate-commerce element and any suggestion that he was dangerous or violent. The government counters that Luong fought to exclude a range of government evidence, including cell phone evidence, photo line-up evidence, other-acts and prior-conviction evidence, Craigslist evidence, and testimony from Bank of America, STAR Network, and Craigslist employees, among others.

The commentary to the U.S. Sentencing Guidelines explicitly provides that a defendant may admit factual guilt but go to trial to "challenge . . . the applicability of a statute to his conduct." U.S.S.G. § 3E1.1(a) cmt. 2. Here, Luong admitted factual guilt, but proceeded to trial to assert that his offense conduct did not fall within the scope of the Hobbs Act's jurisdictional nexus. Challenging the federal government's jurisdiction to prosecute the alleged offense conduct is not inconsistent with contrition. Nor is a defendant foreclosed from receiving credit for acceptance of responsibility because his attorney made good-faith challenges at trial to evidence going to that question. Insofar as the district court declined to give the adjustment based on such challenges by Luong's counsel, it erred as a matter of law.

To hold otherwise would be to mandate that defense counsel sit on her hands while the government proffers affidavits in lieu of live testimony, or lay witnesses rather than qualified experts to provide expert opinions, or surprise witnesses a la Perry Mason. Here, Luong's evidentiary challenges, some of which were sustained and resulted in stricken testimony, were part and parcel of Luong's challenge to the interstate-commerce nexus. *See United States v Rojas-Flores*, 384 F.3d 775, 780–81 (9th Cir. 2004) (holding that

the district court erred in denying adjustment for acceptance of responsibility where the defendant went to trial to challenge the applicability of the statute of offense instead of his factual guilt, and the defendant cross-examined witnesses); *United States v. Ing*, 70 F.3d 553, 556 (9th Cir. 1995) (vacating sentence and remanding case for resentencing, noting that "an entrapment defense is not necessarily incompatible with acceptance of responsibility"); *McKinney*, 15 F.3d at 852 (noting that a defense that relied on cross-examination and presented no affirmative defense "is hardly the kind of defense that refutes the strong inference that [the defendant] accepted responsibility").

While the government also takes issue with Luong's counsel's use of the word "innocence" during closing arguments and Luong's failure to demonstrate, in the government's view, meaningful contrition, these arguments are non-starters. Luong's attorney argued that he was innocent under the statute because the interstate-commerce nexus was not satisfied. *See, e.g.*, ER 364 ("He is innocent of the charges in Counts One and Two because this robbery did not affect or potentially affect interstate commerce . . . . [T]he Defense is not here to deny that a robbery occurred; to deny the experience of the victim in this case, Mr. Montellano. Nobody should have to experience being robbed. But what happened was not a federal crime on February 15th, 2015."). But as discussed above, this is not inconsistent, as a matter of law, with contrition. And while the district court clearly would have acted according to law by denying the adjustment for the defendant's lack of contrition, in light of his failure to allocute and his brief letter of contrition, the district court did not state that it relied on these factors. *See, e.g.*, *United States v. McKittrick*, 142 F.3d 1170, 1178 (9th Cir. 1998) (concluding that the defendant's

challenge to regulation's intent requirement did not foreclose an adjustment for acceptance of responsibility and, accordingly, vacating and remanding case to determine whether the denial was based on an impermissible ground). We vacate Luong's sentence and remand for resentencing, leaving it for the district court to make a factual finding on contrition in the first instance.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED in part and VACATED in part.** The case is **REMANDED** to the district court for further proceedings consistent with this opinion.