NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 1 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| UNITED STATES OF AMERICA, | No. 20-10280 |
|---|---|
| Plaintiff-Appellee, | D.C. Nos. 3:18-cr-00049-LRH-CLB-1 3:18-cr-00049-LRH-CLB |
| v. | |
| ERIC ROMERO-LOBATO, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted May 18, 2022
Pasadena, California

Before: LEE and BRESS, Circuit Judges, and FITZWATER,*** District Judge.

In this consolidated appeal following two separate jury trials, Eric Romero-Lobato appeals his convictions for conspiracy to commit Hobbs Act robbery, attempted Hobbs Act robbery, discharging a firearm during a crime of violence, carjacking, using a firearm during a crime of violence, and possession of a firearm

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*\* The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

by a felon.  We have jurisdiction under 28 U.S.C. § 1291.  Based on the Supreme Court's intervening decision in *United States v. Taylor*, --- S. Ct. ---, 2022 WL 2203334 (2022), we vacate Romero-Lobato's Count Three conviction under 18 U.S.C. § 924(c)(3)(A) and remand for resentencing.  But we affirm his remaining convictions.

1.  The district court did not abuse its discretion, *Wendell v. GlaxoSmithKline*, 858 F.3d 1227, 1231 (9th Cir. 2017), in admitting testimony by Steven Johnson as an expert witness in the field of firearm and toolmark analysis.  A witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if," *inter alia*, "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589–95 (1993).  In assessing whether an expert's proposed testimony is reliable, the district court may consider "(1) whether the method has been tested; (2) whether the method 'has been subjected to peer review and publication;' (3) 'the known or potential rate of error;' (4) whether there are 'standards controlling the technique's operation;' and (5) the general acceptance of the method within the relevant community." *United States v. Johnson*, 875 F.3d 1265, 1280 n.10 (9th Cir. 2017) (quoting *Daubert*, 509 U.S. at 592–95).

2

The district court did not abuse its discretion in finding that Johnson was qualified to testify as an expert in firearms and toolmark analysis based on his extensive experience in this field, including through the Washoe County Sheriff's Office, the National Firearms Examiner Academy, and the Association of Firearms and Toolmark Examiners. The district court also did not abuse its discretion in concluding that Johnson's testimony was "the product of reliable principles and methods . . . reliably applied . . . to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592. Based on the record before it, the court permissibly concluded that the toolmark method is testable, has been subjected to publication and peer review, has a low error rate, and has long been an accepted method in the forensic science community. Therefore, although the method may involve a degree of subjectivity, the district court was within its discretion to admit this evidence. *See Johnson*, 875 F.3d at 1281 (holding that district court did not err in allowing an expert to testify on the toolmark method). Contrary to Romero-Lobato's argument, Johnson did not testify to a "scientific certainty" about his findings. *United States v. Cazares*, 788 F.3d 956, 988 (9th Cir. 2015). Thus, the district court did not err in allowing Johnson's testimony.

2. We review de novo whether Joel Becerra-Macias's in-court identification of Romero-Lobato was so suggestive that it violated due process. *United States v. Jones*, 84 F.3d 1206, 1209 (9th Cir. 1996). To show a due process

3

violation, Romero-Lobato must demonstrate that "unnecessarily suggestive circumstances arranged by law enforcement" prompted Becerra-Macias's testimony and created "a substantial likelihood of misidentification." *Perry v. New Hampshire*, 565 U.S. 228, 239 (2012).

Romero-Lobato did not make this showing. Becerra-Macias witnessed the crime occur, independently identified Romero-Lobato in a news article provided by his daughter, and he had compared that photo to surveillance footage from the restaurant. Romero-Lobato has not demonstrated that Becerra-Macias's in-court identification, which was subject to cross-examination, was insufficiently reliable so as violate due process.

3.      The district court acted within its discretion, *United States v. Lemus*, 847 F.3d 1016, 1024 (9th Cir. 2016), by denying Romero-Lobato's request for a mistrial based on Brittney Chilton's testimony about DNA testing. Any suggestion from Chilton that defense counsel had an obligation to agree to destructive testing of a sweatshirt was cured through the court's instructions to the jury and its reading of a stipulation that the parties had prepared on this point. *See id.* ("[A] mistrial is appropriate only where there has been so much prejudice that an instruction is unlikely to cure it.") (quotations omitted). Chilton's testimony also did not violate *Napue v. Illinois*, 360 U.S. 264 (1959), because it was not false and, regardless, was cured by the stipulation and other instructions.

4. The government's statements during closing argument did not constitute prosecutorial misconduct. Because Romero-Lobato failed to object at trial, we review for plain error. *United States v. Luong*, 965 F.3d 973, 987 (9th Cir. 2020). The government did not vouch for a witness, *United States v. Brooks*, 508 F.3d 1205, 1209 (9th Cir. 2007), misstate the evidence, *United States v. Preston*, 873 F.3d 829, 844 (9th Cir. 2017), or "denigrate the defense as a sham," *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999). The prosecution instead asked the jury to draw permissible inferences from facts in the record. *See United States v. McChristian*, 47 F.3d 1499, 1507 (9th Cir. 1995) (noting the government's "reasonably wide latitude" during closing).

5. We review de novo whether the evidence was sufficient to convict Romero-Lobato of attempted robbery. *United States v. Mincoff*, 574 F.3d 1186, 1191 (9th Cir. 2009). To determine if the evidence was sufficient, we ask whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1164–65 (9th Cir. 2010) (quotations omitted). Here, the government produced evidence demonstrating that Romero-Lobato likely possessed the weapon during a later crime, his family owned the getaway car, surveillance footage featured a man who looked "remarkably similar" to Romero-Lobato (with Facebook photos matching that footage), and the

5

restaurant owner identified him as the shooter. While Romero-Lobato argues that Becerra-Macias's identification was incorrect, a jury could reasonably have disagreed when presented with competing evidence. *Nevils*, 598 F.3d at 1164–65.

6. In *United States v. Taylor*, --- S. Ct. ---, 2022 WL 2203334 (June 21, 2022), the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A). Romero-Lobato's Count Three § 924(c) conviction and resulting 120-month mandatory consecutive sentence therefore lack a lawful predicate. As a result, we vacate Romero-Lobato's § 924(c) conviction and sentence and remand for resentencing.

7. Admitting the carjacking victim's identification of Romero-Lobato did not violate due process. We review the constitutionality of pretrial identification procedures de novo. *United States v. Bruce*, 984 F.3d 884, 890 (9th Cir. 2021). To determine if a pretrial identification procedure violates due process, we ask "whether the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 891. Assuming without deciding that the identification procedure was impermissibly suggestive, Leticia Henriet's testimony was sufficiently reliable. *Id.* Henriet had a clear view of Romero-Lobato during the carjacking. Henriet's testimony was also consistent with her account to the police and her description of the suspect. And her initial identification was made hours after the carjacking occurred, making it more reliable. *See Neil v. Biggers*,

6

409 U.S. 188, 199–200 (1972).

8. The government did not commit prosecutorial misconduct during closing argument of the carjacking trial. We review for plain error because Romero-Lobato failed to object to the contested statements at trial. *Luong*, 965 F.3d at 987. The prosecution did not vouch for Henriet or misstate the evidence. The government also did not give a false statement or "propound inferences" it had "very strong reason to doubt" when it discussed the import of the gun found on the passenger seat of Henriet's car. *United States v. Reyes (Reyes II)*, 660 F.3d 454, 462 (9th Cir. 2011). Finally, the government did not denigrate the defense as a sham when it criticized Dr. Laney's research as not involving real-life victims. The prosecutor's characterization reflected the government's position that Dr. Laney's opinions were no substitute for Henriet's first-hand observations. *United States v. Tucker*, 641 F.3d 1110, 1120 (9th Cir. 2011) (the prosecutor may "strike hard blows based on . . . all reasonable inferences from the evidence"). Regardless, none of the challenged statements "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Alcantra-Castillo*, 788 F.3d 1186, 1191 (9th Cir. 2015).

9. We review de novo whether a jury instruction creates an unconstitutional presumption or inference. *United States v. Trevino*, 419 F.3d 896, 902 (9th Cir. 2005). Here, the challenged jury instructions on proof of intent were

7

lawful.  The instructions properly stated that the jury may infer intent from circumstantial evidence such as "objective facts and the actions of the defendant." *United States v. Hernandez*, 952 F.2d 1110, 1114 (9th Cir. 1991).  They also spoke in the permissive.  *See Francis v. Franklin*, 471 U.S. 307, 314–15 (1985) (holding that a permissive-inference instruction does not violate the Due Process Clause when "the suggested conclusion" is supported by "reason and common sense . . . in light of the proven facts before the jury").  In this case, the conclusion that Romero-Lobato intended to cause death or serious bodily injury to Henriet flowed naturally from the proven fact that he pointed a gun at her.

10.    Carjacking is a crime of violence under 18 U.S.C. § 924(c).  *United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017) (per curiam).  Romero-Lobato acknowledges that circuit precedent has resolved this question against him, and he raises it only to preserve the issue for future review.

11.    Because Romero-Lobato did not object, we review for plain error his challenge to a condition of supervised release permitting warrantless searches.  *United States v. Wolf Child*, 699 F.3d 1082, 1089 (9th Cir. 2012).  We have previously upheld a supervised-release condition that is analogous to Romero-Lobato's.  *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007).  The district court was also not required to state further its specific reasons for the condition in question.  *See Wolf Child*, 699 F.3d at 1090 (a district court "is ordinarily not

8

required to explain on the record its reasons for imposing each condition of supervised release"). Accordingly, Romero-Lobato has not demonstrated plain error.[1]

**AFFIRMED in part; VACATED and REMANDED in part.**

---

[1] Because we vacate Romero-Lobato's sentence and remand for resentencing in light of *Taylor*, we do not address his argument that his sentence is substantively unreasonable.